UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSH WORKMAN,

    Plaintiff,

v.                                                      Civil Action No.:   2:23-cv-783

SCENIC ENTERPRISE, INC.,
a domestic corporation

    Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Josh Workman, through his undersigned counsel for his *Complaint,* states as follows:

### INTRODUCTION

1. This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335 ("USERRA"). It is brought by Mr. Workman against Defendant Scenic Enterprise, Inc. ("Scenic").

2. Pursuant to 38 U.S.C. §4323(h)(1), "No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]".

### JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this civil action founded upon federal question jurisdiction, 28 U.S.C. §1331, as conferred by actions arising under USERRA, 38 U.S.C. §4323(b)(1).

4.　　Venue is proper in this judicial district under 38 U.S.C. §4323(c)(2) because Defendant Scenic maintains a place of business in this judicial district per 38 U.S.C. §4323(c)(2) and is considered a "private employer" for the purposes of 38 U.S.C. §4303(4)(A).

## PARTIES

5.　　Plaintiff, Mr. Josh Workman, currently resides in Boone County, West Virginia.

6.　　Defendant Scenic is a private, for-profit company with its corporate headquarters located in Princeton, West Virginia. Scenic was and is an "employer" for the purposes of 38 U.S.C. §4303(4)(A) and is subject to suit under USERRA §4323(a).

7.　　Mr. Workman was employed by Scenic, and served in the West Virginia Army National Guard ("WVARNG"). Plaintiff is a qualified employee and member of the uniformed services for purposes of 38 U.S.C. §4303(3), (9), and (16).

8.　　Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of Defendant, such individuals at all times acted on behalf of Defendant named in this action within the scope of their respective employments and agencies.

9.　　Whenever and wherever reference is made in this Complaint to any conduct of Defendant, such allegations or references shall also be deemed to mean the conduct of each Defendant, acting individually, jointly and severally.

10.　　Plaintiff is informed and believes, and on the basis of that information and belief, alleges that all times mentioned in this Complaint, Defendant was the agent and employee of their codefendants, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment.

## GENERAL ALLEGATIONS

11. Mr. Workman realleges and incorporates herein by reference each and every allegation contained within paragraphs 1 through 10, inclusive, as though set forth at length herein and made a part hereof.

12. Mr. Workman joined the WVARNG in January of 2019, where he is currently serving as a Specialist (E-4).

13. On April 19, 2023, Mr. Workman began his employment with Scenic as an Equipment Operator at its worksite in Twilight, West Virginia. He started his employment by conducting a two-day probationary period to train on front-end loaders, and then once completed, he was directed to report for his regular work shifts at Scenic's "Harris Flat" worksite.

14. On April 23, 2023, Mr. Workman sent his WVARNG training schedule to his supervisor, Mr. Eddie Compton. The training schedule included Mr. Workman's annual training period in June 2023 in Fort Stewart, Georgia, and remaining monthly inactive duty training (IDT) periods for fiscal year 2023. This schedule was also provided to Ms. Ann Mangus Cook on April 15, 2023, who was employed by Scenic in a human resources/payroll capacity.

15. Mr. Workman's schedule with Scenic was generally twelve-hour shifts for six days a week, where he would be called in to work different shifts, and filling in for other Scenic employees who did not report to work.

16. On May 25, 2023, Ms. Cook informed Mr. Workman that he was promoted to a permanent position with consistent hours and working location.

17. On June 6, 2023, Mr. Workman departed to perform his WVARNG annual training obligation.

18. When he returned on Friday, June 30, 2023, Mr. Workman contacted Mr. Compton, asking him whether he wanted him back at work that week or next. Mr. Compton said he would let him know.

19. Later that afternoon, Mr. Workman arrived at Scenic's Twilight worksite to pick up his paycheck. While he was there, he was informed by a coworker that there were changes made to the schedule that would impact him, and that he needed to talk to Mr. Compton.

20. Mr. Workman again contacted Mr. Compton, saying "someone told me you guys switched stuff up to talk to you."

21. On July 3, 2023, Mr. Compton replied stating "Josh I [sic] call if I need u [sic] ok…"

22. After over a week of not being reemployed by Scenic, Mr. Workman contacted Mr. Compton on Monday, July 10, 2023 asking "anything tonight?" Mr. Compton replied "[n]o."

23. After over three weeks without reemployment, Mr. Workman reached out to Ms. Cook on July 24, 2023, stating "I've been told that things got changed at work since I was gone to Georgia… [i]s that why I'm not being worked?"

24. Ms. Cook replied "[n]ot sure… need to talk to Eddie… I know they changed that we don't use as many loaders." Mr. Workman then responded with:

> "[w]ell Eddie is reading my messages and not replying… I got put on full time right before I left and now I've been home for 3 weeks and not even a message. I know they have loaders running at the flat because I had went up there the other day… [j]ust curious if I am still employed since I was gone to Georgia…[i]f not I need to look for a job to support my family."

25. On July 31, 2023, after Mr. Workman was still not reemployed since his return from his annual military training in Fort Stewart, Georgia, he again reached out to Mr. Compton,

4

stating "… it's been a month since I've been home from Georgia and I still haven't worked. I just need to know if you've fired me or what because I'll need to find another job if you have."

26. On August 4, 2023, Ms. Cook asked Mr. Workman "[a]re you still looking for [sic] job?" Mr. Workman responded that he was "hoping [he] was still employed" by Scenic. Additionally, he asked Ms. Cook "why would I be looking for a job if I haven't gotten fired… I need to look for a job if you guys had fired me." Ms. Cook responded, "call Eddie."

27. Despite Mr. Workman's attempts, Scenic failed to reemploy him to his fulltime position he returned from his annual training period with the WVARNG in Georgia.

28. Due to Scenic's unlawful denial of reemployment, Mr. Workman was forced to acquire subsequent employment to care for his wife and children.

## COUNT I

## **VIOLATIONS OF 38 U.S.C. §4301 *et seq*.**

29. Mr. Workman incorporates by reference the allegations in the preceding paragraphs.

30. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 33 U.S.C. §4301(a)(3).

31. Section 4311(a) of USERRA states in relevant part, that a person "who is a member of… performs, has performed,…or has an obligation to perform service in a uniformed service shall not be denied… *reemployment, retention in employment,…* or any benefit of employment by an employer on the basis of that membership,… performance of service, or obligation." (italics added).

32. Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

33. A "benefit of employment" is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, include any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations and the opportunity to select work hours or location of employment.

38 U.S.C. §4303(2).

34. In the Department of Labor's Fiscal Year 2010 report to Congress (published in July 2011), the department clarified its interpretation that a "benefit of employment" included freedom from workplace harassment and/or a hostile work environment:

> The Department of Labor considers it a violation of USERRA for an employer to cause or permit workplace harassment, the creation of a hostile working environment, or to fail to take prompt and effective action to correct harassing conduct because of an individual's membership in the uniformed service or uniformed service obligations.

Department of Labor (USERRA) Fiscal Year 2010 Report to Congress.

35. USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a *voluntary* or *involuntary* basis, in time of peace or war. 38 U.S.C. §4312(e)(1)(A)(i); 20 C.F.R. §1002.115. (italics added).

36. Mr. Workman's protected status as a WVARNG member was a substantial and motivating factor in Scenic failing to reemploy Mr. Workman after his June annual training period with the WVARNG, and then the following constructive termination of his employment.

37. As a direct and proximate result of the conduct of Defendant as set forth in this count, Mr. Workman has suffered injuries and damages, including, but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all amounts to be proven at trial.

38. Plaintiff alleges that Defendant had knowledge of Mr. Workman's USERRA protections, and that Defendant's subsequent violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. §4323(d)(1)(C).

39. Pursuant to 38 U.S.C. § 4323(d)(3), Plaintiff requests an award of prejudgment interest.

40. Pursuant to 38 U.S.C. §4323(h)(2), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and litigation expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing, Plaintiff prays for the following relief against Defendant:

1. Declaration that Defendant's actions and practices complained of herein are unlawful and in violation of USERRA, 38 U.S.C. §4301, *et seq*.;

2. Require that Defendant fully comply with the provisions of USERRA by providing Plaintiff all employment benefits denied to him as a result of the unlawful acts and practices as complained herein;

3. Fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h)(2);

4. Award Plaintiff prejudgment interest on the amount of lost wages or employment benefits found due;

5. Order that Defendant pays compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of Defendant's willful violation of USERRA;

6. Grant an award for costs of suit incurred; and

7. Grant such other further relief as may be just and proper, and which Plaintiff may be entitled to under all applicable laws.

**PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE.**

           **JOSH WORKMAN**
           Plaintiff
           By Counsel

s/ Kristina Thomas Whiteaker
Kristina Thomas Whiteaker
(State Bar No. 9434)
The Grubb Law Group, PLLC
1114 Kanawha Boulevard, East
Charleston, WV 25301
Telephone: (304) 345-3356
kwhiteaker@grubblawgroup.com

s/ Brian J. Lawler
Brian J. Lawler*
PILOT LAW, P.C.
4632 Mt. Gaywas Drive
San Diego, CA 92117
Telephone: (619) 255-2398
blawler@pilotlawcorp.com

s/ Kevin Wilson
Kevin Wilson*
KEVIN WILSON LAW PLLC
3110 Horton Avenue
Louisville, KY 40220
Telephone: (502) 276-5050
kevin@klwilsonlaw.com

*visiting attorney application pending